UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TURSHA ROY GRAY,

                                  Plaintiff,

                                                              <u>DECISION AND ORDER</u>

                                                              12-CV-6485L

                                  v.

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,
                                  Defendant.
_____

**INTRODUCTION**

Plaintiff Tursha Gray ("Gray"), brings this action under 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("the Commissioner") that he is not disabled under the Social Security Act, and therefore, is not entitled to Social Security disability benefits.

Plaintiff originally applied for Social Security disability insurance benefits on December 8, 2008 (Tr. 122-123).[1] He alleged that he had been disabled since September 25, 2008, due primarily to neck, shoulder and back pain. Plaintiff's application was initially denied. Plaintiff then requested a hearing before an administrative law judge ("ALJ").

The hearing was held before ALJ Michael Devlin on April 14, 2010. (Tr. 44-71). ALJ Devlin determined that plaintiff was not disabled under the Act (Tr. 22-37), and that decision

---

[1]"Tr." refers to the transcript of the administrative record.

became the final decision of the Commission on July 16, 1012 when the Appeals Council denied plaintiff's request for review. (Tr. 1-6). This appeal followed.

The Commissioner has moved (Dkt. #5) and plaintiff has cross moved (Dkt. #7) for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c). For the reasons that follow, the Commissioner's decision is affirmed.

## FACTUAL BACKGROUND

Familiarity with the pertinent facts, summarized below, is presumed.

Plaintiff was born August 15, 1963 and is presently 50 years old. He has an eleventh-grade education and past relevant work as a chemist, cook, motor vehicle detailer, machine operator, warehouse shipping and receiving worker, and temporary employee. On September 1, 2005, plaintiff was injured at work when a forklift drove into his desk and crushed him between the desk and a barrel of chemicals, injuring plaintiff's back, left arm, left shoulder and left leg and foot. (Tr. 223-224). Plaintiff thereafter consistently complained of back and leg pain, and was diagnosed with a partial left rotator cuff tear and lumbosacral strain, and treated with pain medications. (Tr. 223-226). In connection with his application for Workers' Compensation, two treating physician's assistants concluded that he was, for Workers' Compensation purposes, 50% disabled at that time, and was to lift no more than 25 pounds, limit bending and twisting, and work only part-time (5 hour days), light duty. (Tr. 253).

Plaintiff returned to work on a part-time basis. On September 24, 2008 (the day before his alleged disability onset date), plaintiff sustained a whiplash injury in a motor vehicle accident. (Tr. 287). At subsequent medical visits, plaintiff complained of ongoing back and neck pain, and was treated with pain medications. On November 7, 2008, plaintiff's treating nurse practitioner, Diane Olejar ("Olejar"), opined that plaintiff had achieved "maximum medical improvement," stating that

plaintiff had moderate impairment in his left shoulder and lower back, which resulted in the following exertional restrictions: limited reaching above the shoulder, lifting no more than 25 pounds, and pushing and pulling no more than 50 pounds. (Tr. 288). Olejar's treatment of plaintiff was supervised, and her treatment notes signed, by occupational medicine specialist Dr. Karl Auerbach. *Id*.

At the hearing, the ALJ heard testimony from a vocational expert ("VE"), Peter Manzi. The ALJ asked the VE whether an individual of plaintiff's age and background, with a high school education and the ability to lift and carry 10 pounds frequently and 20 pounds occasionally, stand or walk at least two hours and sit for at least six hours out of an 8-hour workday, push/pull no more than10 pounds with the upper extremities and only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl, reach, handle and finger with the dominant left arm and hand, and less than occasionally climb ladders, ropes and scaffolds, could perform work existing in significant numbers in the national economy. (Tr. 67). The VE replied that such an individual could perform the sedentary, unskilled positions of call-out operator, with 16,011 jobs in the national economy and 55 in the Finger Lakes region, and surveillance system monitor, with 16,763 jobs in the national economy and 63 in the Finger Lakes region. (Tr. 67-68)[2].

When asked whether jobs would exist for such an individual if additional limitations were added, including no more than occasional and no repetitive looking up, down or sideways, and/or the ability to alternate between sitting and standing every half-hour, the VE testified that only the surveillance system monitor position could still be performed with any or all of those additional limitations. (Tr. 68).

---

[2] The ALJ's decision listed the number of surveillance system monitor jobs in the Finger Lakes region at 64. (Tr. 37).

3

**DISCUSSION**

**I.  Standard for Determining Disability**

A person is considered disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).  In order to determine whether a claimant is disabled, an ALJ employs a five-step inquiry:

> The first step determines whether the claimant is engaged in 'substantial gainful activity.'  If he is, benefits are denied.  If he is not engaged in such activity, the process moves to the second step, which decides whether the claimant's condition or impairment is 'severe'– i.e., one that significantly limits his physical or mental ability to do basic work activities.  If the impairment is not severe, benefits are denied.  If the impairment is severe, the third step determines whether the claimant's impairments meet or equal those set forth in the 'Listing of Impairments'.  . . . contained in subpart P, appendix 1, of the regulations. . . . If the claimant's impairments are not listed, the process moves to the fourth step, which assesses the individual's 'residual functional capacity' (RFC); this assessment measures the claimant's capacity to engage in basic work activities.  If the claimant's RFC permits him to perform his prior work, benefits are denied.  If the claimant is not capable of doing his past work, a decision is made under the fifth and final step whether, in light of his RFC, age, education, and work experience, he has the capacity to perform other work.  If he does not, benefits are awarded.

*Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986) (citations omitted).  It is well-settled that plaintiff bears the burden of proof at the first four steps of the analysis.  At the fifth and final stage of this process, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work that exists in the national economy.  *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

**II.     The ALJ's Decision**

At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date of September 25, 2008.  (Tr. 24).  The ALJ concluded that plaintiff had

4

severe impairments, consisting of mild degenerative disc disease of the lumbar spine, a partial left rotator cuff tear, radial and ulnar nerve lesions in the left arm, and cervicalgia (neck pain) with associated headaches, that did not meet or equal a listed impairment. (Tr. 24). At step four, the ALJ concluded that plaintiff could not perform his past relevant work, but nonetheless retained the RFC to perform light work, with certain limitations. Specifically, the ALJ found that plaintiff could perform light work except that he could only occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk at least two hours in an eight hour workday, sit about six hours in an eight hour workday, push and/or pull up with the upper extremities up to ten pounds, alternate between sitting and standing at least every half hour, occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, less than occasionally climb ladders, ropes and scaffolds, occasionally reach, including overhead, handle and finger with the dominant left upper extremity, occasionally look up, down, left or right, but with no repetitive looking up, down, left or right. (Tr. 25).

At step five, the ALJ utilized the Medical-Vocational Grid Rules and considered the testimony of the VE, and concluded, based on plaintiff's age, education, and work experience, that plaintiff was not disabled because he retained the RFC to perform the job of surveillance system monitor. (Tr. 36-37).

**III. Standards of Review**

The Commissioner's decision that plaintiff was ineligible to receive benefits must be affirmed if it applies the correct legal standards and is supported by substantial evidence. 42 U.S.C. § 405(g); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v.*

5

*Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). If the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force," a district court cannot not substitute its own judgment for that of the Commissioner. *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *see also Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) ("[i]t is not the function of a reviewing court to decide *de novo* whether a claimant was disabled.").

Such a deferential standard, however, is not applied to the Commissioner's conclusions of law. *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984); *accord Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). The Court must determine if the Commissioner's decision applied the correct legal standards in finding that plaintiff was not disabled. "Failure to apply the correct legal standards is grounds for reversal." *Townley*, 748 F.2d at 112. Only after finding that the correct legal standards were applied should the Court consider the substantiality of the evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987). "'Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.'" *Schaal*, 134 F.3d at 504 (quoting *Johnson*, 817 F.2d at 986).

**IV. Plaintiff's Alleged Disability**

I find that the ALJ's decision was supported by substantial evidence.

On balance, the plaintiff's medical records and treating and examining physician reports simply do not support his claim of total disability. As such, I concur with the ALJ and conclude that there is substantial evidence to support his determination that plaintiff retained the residual functional capacity to perform the full range of light work with the following restrictions:

occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk at least two hours in an eight hour workday; sit about six hours in an eight hour workday; push and/or pull up with upper extremities up to 10 pounds; alternate between sit and stand at least every half-hour; occasionally climb ramps and/or stairs, balance, stoop, kneel, crouch and crawl; less than occasionally climb ladders/ropes/scaffolds; occasionally reach, including overhead, handle, and finger with dominant left upper extremity; occasionally look up, down, left or right, and no repetitive looking up, down, left or right.

I note that this RFC is consistent with, and indeed, incorporates limitations additional to, the limitations specified in the opinion of plaintiff's treating nurse practitioner, Ms. Olejar, which were cosigned by Dr. Auerbach. Plaintiff does not find fault with the ALJ's consideration of Olejar's opinion in determining plaintiff's RFC, but argues that the ALJ's RFC assessment should have also incorporated the additional limitations identified by his chiropractor, Dr. Karen DrBrine, as chiropractors, like nurse practitioners, are classified as an acceptable "other source" for purposes of assessing the medical record. I disagree, and find that the ALJ adequately set forth his reasons for rejecting Dr. DeBrine's assessment, primarily that the extent of the limitations described by Dr. DeBrine (including no lifting, pushing or pulling of any weight, for any length of time, whatsoever, Tr. 520) was unsupported by objective testing or other medical evidence or record, and that the treatment relationship between plaintiff and Dr. DeBrine was extremely short-lived, as plaintiff had treated with her on only three occasions (Tr. 33). The ALJ's decision to reject the opinion of Thomas Frosini and Leslie Sanders, physician assistants employed by Dr. Peter Capicotto, an orthopaedic surgeon with whom plaintiff treated prior to his motor vehicle accident, was also well-supported, due to the short-lived nature of the treatment relationship (four visits), the fact that the notes were not cosigned by Dr. Capicotto, and because their recommendation that plaintiff was or

thereafter remained capable only of "part-time" work is not supported elsewhere in the record. (Tr. 33, 269).

I also find that the ALJ's decision to disregard plaintiff's self-serving reports of disabling pain and/or weakness was not improper, in light of plaintiff's inconsistent statements to his medical care providers concerning the extent to which pain treatments were effective, and plaintiff's self-reports of daily activities, including assisting with household chores and personal care. (Tr. 31).

Plaintiff also argues that the Commissioner failed to meet the step five burden to demonstrate work existing in significant numbers in the national economy which plaintiff can perform, since the VE testified that plaintiff could only perform one position: surveillance system monitor, with 16,763 jobs in the national economy and 63 in the Finger Lakes region. (Tr. 68). According to 20 CFR §404.1566(b), work "exists in the national economy when there is a significant number of jobs (in one or more occupations) having the requirements which [the claimant is] able to meet with [his RFC]." Accordingly, "a single occupation may constitute a sufficient occupational base to permit a claimant to make a work adjustment." *Nix v. Sullivan*, 1991 U.S. App. LEXIS 13707 at *12-*13 (2d Cir. 1991) (unpublished opinion). *See also Fergusun v. Astrue*, 2010 U.S. Dist. LEXIS 77204 at *21 (W.D.N.Y. 2010) ("ALJ was obligated to identify only one job in the national economy that Plaintiff could perform"); *Sullivan v. Astrue*, 2009 U.S. Dist. LEXIS 40486 at *44 n.15 (W.D.N.Y. 2009) ("[e]ven if the VE had identified only one job that existed in significant numbers, the Commissioner would have met his burden at the fifth step").

In determining whether a position exists in significant numbers, the relevant consideration is whether significant numbers exist "either in the region where [the claimant lives] or in several other regions of the country." 20 C.F.R. §§ 404.1566(a), 416.966(a). Moreover, "what constitutes a 'significant number' is fairly minimal." *Rodriguez v. Astrue*, 2013 U.S. Dist. LEXIS 100920 at *32 (S.D.N.Y. 2013) (quoting *Fox v. Commissioner*, 2009 U.S. Dist. LEXIS 11387 at *8 (N.D.N.Y.

2009)). In fact, courts have repeatedly held that where a VE testifies that surveillance system monitor is the sole position a claimant can perform, the Commissioner's step 5 burden to show that the claimant could perform work existing in significant numbers has been satisfied. *See Daniels v. Astrue*, 2012 U.S. Dist. LEXIS 54654 at *48-*49 (S.D.N.Y. 2012) (step 5 burden met by surveillance system monitor position, with 25,000 jobs nationally and 1,236 regionally); *Fox*, 2009 U.S. Dist. LEXIS 11387 (step 5 burden met by surveillance system monitor position, with "a small percentage less" than 132,980 jobs nationally and 200 regionally); *Colon v. Commissioner*, 2004 U.S. Dist. LEXIS 5125 at *22-*23 (N.D.N.Y. 2004) (step 5 burden satisfied by testimony that claimant could perform surveillance system monitor position, with 100,000 jobs nationally and 100 regionally).

Candidly, the Court is troubled by the low number of nationally and regionally available surveillance system monitor jobs as described by the VE. Indeed, research has not revealed any body of case law examining both national and regional job numbers as small as those presented here, nor is the Court aware of any cases which authoritatively reject a given number of jobs as "not significant" under similar circumstances to those presented here. Nonetheless, it cannot be said that totals of over 16,000 jobs nationally and 60 regionally (the numbers identified by the ALJ for the surveillance system monitor position in this case) are not"significant" as a matter of law, given the low threshold evidently required, and the Social Security Act's emphasis on providing benefits only to claimants "who cannot engage in *any* other kind of substantial gainful work which exists in the national economy." *Rodriguez*, 2013 U.S. Dist. LEXIS 100920 at *29.

The Court does take notice of a minor factual error by the ALJ, but concludes that it is harmless. The ALJ's hypothetical questions to the VE describe plaintiff has having completed a "high school education," when the record elsewhere indicates that plaintiff's highest educational level was the eleventh grade. (Tr. 66-67). However, even if plaintiff is considered to have a

9

"limited" education rather than a high school education, correcting that fact does not undermine the significant evidence of record supporting the ALJ's conclusion and would not change the outcome of this case, and as such does not constitute sufficient grounds to remand the matter. Initially, although a claimant's educational level is a crucial element in applying the Grids, here, application of the correct rule (Rule 202.17, which describes a younger individual age 45-49 with a limited or less education and the ability to perform light work) would still dictate a finding of "not disabled." With respect to the ALJ's hypotheticals, the surveillance system monitor position identified by the VE in response does not require a high school education in any event. *See* Dictionary of Occupational Titles 279.367-010. *See generally Bond v. Commissioner*, 2009 U.S. Dist. LEXIS 118005 (N.D.N.Y. 2009) (individual with a "limited education" can perform the position of surveillance system monitor). As such, I conclude that this factual error was harmless.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for judgment on the pleadings (Dkt. #7) is denied, and the Commissioner's motion (Dkt. #5) is granted. The Commissioner's decision appealed-from is affirmed, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      August 19, 2014.